IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COURTNEY D. ROARK, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :   Civ. No. 20-1150-LPS |
| | : |
| MARK BUCKWORTH, et al., | : |
| | : |
| Defendants. | : |

Courtney D. Roark, Newark, Delaware. Pro Se Plaintiff.

Mengting Chen, Esquire, New Castle County Law Department, New Castle, Delaware. Counsel for Defendant New Castle County Government Center.

## **MEMORANDUM OPINION**

November 17, 2020
Wilmington, Delaware

STARK, U.S. District Judge:

## I.  INTRODUCTION

Plaintiff Courtney D. Roark ("Plaintiff" or "father") proceeds *pro se* and has paid the filing fee. He commenced this action on August 28, 2020. (D.I. 1) While Plaintiff did not invoke a federal statute in his Complaint, the civil cover sheet cites 42 U.S.C. § 1983 as the statute under which he proceeds. (D.I. 1-1 at 1) Pending before the Court are Defendant New Castle County Government Center's ("NCC") motion to dismiss[1] and Plaintiff's emergency motion for injunctive relief, by which Plaintiff seeks full custody of his child. (D.I. 6, 7)

## II.  BACKGROUND

This case concerns orders entered by Defendant Judge Mark Buckworth ("Judge Buckworth") in the Family Court of the State of Delaware in and for New Castle County. Judge Buckworth is sued in his official capacity as are Defendants Delaware Supreme Court Justices Karen Valihura ("Justice Valihura"), James Vaughn ("Justice Vaughn"), and Gary Traynor ("Justice Traynor"). (D.I. 1 at 11) NCC and the Delaware State Department of Justice ("DOJ") are also named defendants. (*Id.*)

On March 17, 2018, Plaintiff filed a petition to modify custody, requested sole custody, and opposed a proposed move to Georgia by the mother ("mother") of Plaintiff's son. (*Id.* at 12) The mother answered the petition and a hearing was held before Judge Buckworth on October 29, 2018. (*Id.*) Plaintiff presented evidence at the hearing. (*Id.*) Plaintiff alleges that Judge Buckworth violated his constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution on December 13, 2018, when he ruled that mother would remain the custodial parent

---

[1] NCC moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and (6) for improper service and for failure to state a claim upon which relief may be granted. (D.I. 6) Plaintiff did not file a response to the motion.

1

and allowed the mother to relocate with the son to the State of Georgia. (*Id.* at 12) Plaintiff alleges Judge Buckworth "abandoned his oath to uphold the constitution when he hindered father of his liberty by way of lack of due process, color of law, malicious use of process and fraud on the court." (*Id.*) Plaintiff alleges that on December 30, 2019, Justices Valihura, Vaughn, and Traynor abandoned their oath to uphold the constitution and "conspired to further hinder the father's Fifth and Fourteenth Amendment rights by affirming Buckworth's decision." (*Id.* at 15) Plaintiff further alleges that on July 30, 2020, he "was completely stripped of his liberty, unjustly" by Judge Buckworth, who abandoned his oath to uphold the constitution and robbed Plaintiff of his visitation rights via "malicious use of process." (*Id.* at 16) A recent filing indicates that Judge Buckworth entered an order on July 30, 2020 and ruled against Plaintiff. (*See* D.I. 7)

The Complaint seeks injunctive relief in the form of immediate relief from Judge Buckworth's orders, reversal of the orders, return of the child to this jurisdiction, and award to Plaintiff of custody of the child, as well as two million dollars in damages for gross negligence. (*Id.* at 9) Plaintiff commenced this action on August 28, 2020.

On November 12, 2020, Plaintiff filed a motion for emergency injunctive relief seeking immediate relief from Judge Buckworth's December 13, 2018[2] and July 30, 2020 orders.[3] (D.I. 7)

---

[2] The December 13, 2018 order awarded the parents joint legal custody, and mother primary residential placement with the caveat that mother was allowed to relocate to Georgia. The father was awarded visitation with the child one weekend per month, summer break, winter break, and spring break. (*See* D.I. 7-3 at 16, 20-24)

[3] The July 30, 2020 order ruled on a petition to modify custody and a petition for rule to show cause. (D.I. 7-1 at 20-25) Judge Buckworth entered a default custody modification order in the mother's favor as the father refused to participate. (*Id.* at 24) The mother was given sole legal custody and primary residential placement of the child; the father was ordered to complete a mental health evaluation and recommended treatment and proof of completion before he was allowed visitation; the father was found in contempt of court; and the father was advised that his future filings would not be accepted until they were properly reviewed by Judge Buckworth. (*Id.*)

Plaintiff explains that his child does not want to live in Georgia with his mother. (*Id.* at 1) Plaintiff states that he is seeking sole custody of the child with the mother having visitation. (*Id.*) Plaintiff attached numerous exhibits to the motion, all dated prior to the date he filed this lawsuit. (D.I. 7-1 through 7-4)

## III.   DISCUSSION

### A.   Rooker-Feldman Doctrine

The Complaint seeks injunctive relief and compensatory damages. Plaintiff's emergency motion for injunctive relief is similar to the Complaint, seeking sole custody of the child (although not seeking compensatory damages). The Court first considers whether it has subject matter jurisdiction to entertain the claims raised in the Complaint and emergency motion given that Plaintiff seeks relief from state court orders in both filings.

Federal district courts are courts of original jurisdiction and have no authority to review final judgments of a state court in judicial proceedings.[4] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *see also Power v. Department of Labor*, 2002 WL 976001 (D. Del. May 3, 2002). The Rooker-Feldman doctrine is one that deprives federal courts of subject-matter jurisdiction over a case "brought by [a] state-court loser [ ] complaining of injuries caused by the state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005); *see also Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010).

---

[4]The Rooker-Feldman doctrine refers to principles set forth by the Supreme Court in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Because the doctrine involves subject matter jurisdiction, it may be raised at any time by the court *sua sponte*. *See Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 419 (3d Cir. 2003); *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77 (3d Cir. 2003).

The Rooker-Feldman doctrine bars "lower federal courts from exercising jurisdiction over a case that is the functional equivalent of an appeal from a state court judgment." *Marran v. Marran*, 376 F.3d 143, 149 (3d Cir. 2004); *see also Ernst v. Child and Youth Services of Chester, Cty.*, 108 F.3d 486, 491 (3d Cir. 1997); *Khalil v. N.J. Div. of Child Protection & Permanency*, 594 F. App'x 88, 90 (3d Cir. 2015) ("[F]ederal courts lack jurisdiction over suits that are essentially appeals from state-court judgments."). In other words, "federal courts lack jurisdiction to review state court judgments where the relief sought is appellate review." *Walthour v. Child &Youth Servs.*, 728 F. Supp. 2d 628, 639 (E.D. Pa. 2010) (internal citations omitted).

It is apparent that Plaintiff's claims stem from the two orders entered by Judge Buckworth, both of which concern custody issues. That is, Plaintiff's alleged injuries and relief sought are linked to the state court decisions. *See Ernst*, 108 F.3d at 491; *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996) ("If the relief requested in the federal action . . . would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit.") (internal citation and quotation marks omitted); *Marran v. Marran*, 376 F.3d 143, 149-50 (3d Cir. 2004).

Granting the injunctive relief sought in the Complaint's prayer for relief and the emergency motion for injunctive relief would be the functional equivalent of an appeal of a state-court custody determination. *See Walthour*, 728 F. Supp. 2d at 639 ("Plaintiff seeks injunctive relief to have his minor children returned immediately. Such relief would require this Court to find that the state court child custody determinations regarding Plaintiff's child is null and void. However, as explained above, the Rooker-Feldman doctrine bars this type of relief."); *Bonawitz v. Fosko*, 2014 WL 4165633, at *11 (M.D. Pa. August 20, 2014) ("It is . . . clear that Plaintiff [] is requesting this federal Court to review and overturn the decisions and Orders of the Luzerne County Court and to grant her injunctive relief in the form of full custody of her children. . . . Thus, we find that Plaintiff's

4

claims in the present case are the 'functional equivalent of an appeal.'"); *Calipo v. Erie Cty. Office of Children & Youth Servs.*, 786 F. App'x 329, 331 (3d Cir. 2019) (applying Rooker-Feldman because "[r]estoring Calipo's parental rights . . . would require the District Court to invalidate the state-court's judgment").

In sum, (1) the custody orders at issue were entered against Plaintiff; (2) he complains of injuries caused by the custody order; (3) the orders were entered on December 13, 2018 and July 30, 2020, respectively, before this federal suit was filed on August 28, 2020; and (4) Plaintiff seeks relief from the orders and, in essence, asks the Court to reverse them by awarding him sole custody of his child. Thus, the Rooker-Feldman doctrine applies and the Court lacks subject matter jurisdiction with respect to the injunctive relief portion of the Complaint and the emergency motion.[5]

### B. Eleventh Amendment Immunity

Plaintiff alleges Judge Buckworth and the three Delaware Supreme Court justices, while acting in their official capacities, violated his constitutional rights and conspired to violate his constitutional rights. As relief, he seeks compensatory damages. To the extent Plaintiff is raising independent claims for violations of his constitutional rights in connection with the custody orders, these claims are not barred by the Rooker-Feldman doctrine. *See Calipo*, 786 F. App'x at 332. Nonetheless, such claims must be dismissed based (at least) on Eleventh Amendment immunity.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

---

[5] Because it does not appear that there are ongoing matters in State Court, the Court does not address abstention under the *Younger* abstention doctrine. *See Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010) ("*Younger* abstention is appropriate when: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims.") (internal quotation marks omitted).

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the kind of relief sought. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *see also Ali v Howard*, 353 F. App'x 667, 672 (3d Cir. 2009). Accordingly, 42 U.S.C. § 1983 claims for monetary damages against a state, state agency, or a state official in his or her official capacity are barred by the Eleventh Amendment. *See id.*

The State of Delaware has not waived its immunity from suit in federal court; although Congress can abrogate a state's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983. *See Brooks-McCollum v. Delaware*, 213 F. App'x 92, 94 (3d Cir. 2007).

Eleventh Amendment immunity is extended to Judge Buckworth and the three Delaware Supreme Court Justices to the extent that Plaintiff seeks monetary relief against them in their official capacities.[6] *See Lyman v. Philadelphia Court of Common Pleas Domestic Relations Div.*, 751 F. App'x 174, 178 n.4 (3d Cir. 2018). The DOJ also has Eleventh Amendment immunity. *See e.g., Alston v.*

---

[6] To the extent Plaintiff intended to sue Judge Buckworth and the three Delaware Supreme Court Justices in their personal capacities, the claims are barred by reason of judicial immunity. A judicial officer in the performance of her duties has absolute immunity from suit and will not be liable for her judicial acts. *See Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009); *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted 'in the clear absence of all jurisdiction.'" *Id.* (internal citations omitted). Here, the allegations relate to actions taken by the Defendant judicial officers. The Complaint's unsupported assertions fail to set forth any facts that show any of these judicial officers acted in the absence of jurisdiction.

*Administrative Offices of Delaware Courts*, 178 F. Supp. 3d 222, 229 (D. Del.), *aff'd*, 663 F. App'x 105 (3d Cir. 2016).

Therefore, the Court will dismiss all claims against Judge Buckworth; Justices Valihura, Vaughn, and Traynor; and the DOJ.[7] *See Lyman*, 751 F. App'x at 178 n.4 (concluding District Court correctly applied Eleventh Amendment immunity, as well as judicial immunity doctrine, in dismissing defendant judge sued for damages).

### C. Claims Against New Castle County

NCC filed a motion to dismiss the claims against it for improper service and failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(5) and (6). (D.I. 6) Plaintiff did not file a response to the motion.

Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting the well pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The Complaint names New Castle County Government Center as a defendant. It is not clear why NCC is a named defendant. There are no allegations directed towards it and none of the judicial officers are employed by NCC.

A government entity may be liable for the actions of its employees only if the plaintiff identifies a policy or custom that amounts to deliberate indifference to individual rights. *See City of*

---

[7] Although only NCC has moved to dismiss, that motion – as well as Plaintiff's motion – has caused the Court to review the case. In doing so, the Court has examined whether it has subject matter jurisdiction. Having done so, the Court has determined it lacks jurisdiction and that it must dismiss the action against all Defendants. There is no reason to delay providing this conclusion to the parties and taking appropriate judicial action. *See generally Dietz v. Bouldin*, 579 U.S. __, 136 S. Ct. 1885, 1892 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").

*Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The Complaint does not refer to any NCC employee or allege any policy or custom that caused the alleged constitutional violations. Absent any allegation that a custom or policy established by NCC directly caused harm to Plaintiff, his § 1983 claim cannot stand.

NCC's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) will be granted. The Court finds amendment would be futile.

## IV.    CONCLUSION

For the above reasons, the Court will: (1) dismiss the claims in the Complaint for lack of subject matter jurisdiction under the Rooker-Feldman doctrine and based upon Eleventh Amendment immunity and judicial immunity; (2) grant the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and deny as moot the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) (D.I. 6); (3) dismiss the emergency motion for injunctive relief for lack of subject matter jurisdiction (D.I. 7); and (4) direct the Clerk of Court to close the case.

An appropriate Order follows.